# In the United States Court of Federal Claims

No. 13-515C

(Filed Under Seal:  June 23, 2015)

(Reissued for Publication:  June 29, 2015)[1]

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| WHR GROUP, INC., | * |
| | * |
| Plaintiff, | * Bid Protest; Claim for Attorneys' Fees and Expenses Under the Equal Access to Justice Act; Injunctive Relief Granted; Irrational Corrective Action; Whether Defendant's Position was Substantially Justified. |
| v. | |
| THE UNITED STATES, | |
| Defendant. | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

*David T. Ralston, Jr.*, with whom was *Frank S. Murray*, Foley & Lardner, LLP, Washington, D.C., for Plaintiff.

*Devin A. Wolak,* Trial Attorney, with whom were *Stuart F. Delery,* Assistant Attorney General, *Robert E. Kirschman, Jr.*, Director, *Deborah A. Bynum*, Assistant Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, D.C., *Robert D. English*, Federal Bureau of Investigation, Of Counsel, for Defendant.

OPINION AND ORDER ON PLAINTIFF'S
MOTION FOR ATTORNEYS' FEES AND EXPENSES

WHEELER, Judge.

Plaintiff, WHR Group, Inc. ("WHR"), prevailed in a bid protest, WHR Group, Inc. v. United States, 115 Fed. Cl. 386 (2014) (Block, J.), and now seeks attorneys' fees and

---

[1] The Court issued this opinion under seal on June 23, 2015 and gave the parties until June 30, 2015 to submit any proposed redactions of competition-sensitive, proprietary, confidential, or other protected information.  On June 29, 2015, the parties represented to the Court that they had no proposed redactions, and thus the opinion appears in its original form.

expenses under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412.  Chief Judge Patricia Campbell-Smith transferred this case to Judge Wheeler on June 10, 2015.  WHR's motion for an award of attorneys' fees and costs has been fully briefed, and the parties have waived oral argument.  The total amount of WHR's claim is $110,657.59.  For the reasons explained below, the Court GRANTS WHR's motion.

<u>Background</u>

In January 2013, the Federal Bureau of Investigation ("FBI") issued a competitive solicitation to procure relocation services for its personnel when they are required to move.  The FBI limited the solicitation to companies holding a GSA Federal Supply Schedule contract to provide such services.  "Relocation services" for FBI personnel are designed to minimize the inconvenience of moving, and include home sale services, home marketing services, destination area services, reports, mortgage counseling, property management services, special handling transactions, and move management services.  <u>WHR Group</u>, 115 Fed. Cl. at 390.  The FBI planned to award from one to four Blanket Purchase Agreements ("BPAs") against which task orders could be placed for a 60-month period.  Proposals were to be evaluated on a lowest price, technically acceptable basis.  <u>Id.</u>

The FBI received proposals from seven offerors who met all of the technical requirements.  <u>Id.</u> at 391.  Of these seven, the FBI on March 15, 2013 awarded BPAs to the three lowest priced offerors, Franconia Real Estate Services d/b/a Allegiance Relocation Services ("Allegiance"), Lexicon Government Services, LLC ("Lexicon"), and WHR.  The evaluated prices of these three offerors ranged between $12,165,000 and $12,449,000.  <u>Id.</u>  The incumbent contractor, Brookfield Relocation, Inc. ("Brookfield") was ranked sixth in price, and did not receive an award.  <u>Id.</u>  Brookfield filed a timely protest at the Government Accountability Office ("GAO") on March 22, 2013, contending that WHR and the other two awardees failed to satisfy the "financial capability" requirement in the solicitation.  This requirement mandated that offerors self-certify, with supporting documentation, that they had the capacity to handle 100 percent of the FBI's relocation service needs.  <u>Id.</u> at 390.

The FBI at first opposed the Brookfield protest, but later changed its course following an "outcome prediction" conference with the GAO attorney assigned to the case.  The FBI elected to resolve Brookfield's protest by entering into a settlement agreement on June 7, 2013.  <u>Id.</u> at 392.  Under the settlement, the FBI agreed to award a fourth contract to Brookfield, even though Brookfield had submitted only the sixth lowest price.  <u>Id.</u>  In light of the settlement, the GAO dismissed Brookfield's protest as "academic," but predictably, two other offerors that had been passed over in the award process filed GAO protests of the Brookfield award.  Capital Relocation Services ("CapRelo"), the fourth lowest priced offeror, protested to the GAO on June 17, 2013 challenging the award to

2

Brookfield, but did not contest the awards to Allegiance, Lexicon, or WHR.  Id.  TRC Global Solutions ("TRC"), the seventh lowest priced offeror, protested to the GAO on June 24, 2013 also challenging the Brookfield award, but not the awards to Allegiance, Lexicon, or WHR.  Id.

In response to CapRelo's protest of the fourth award to Brookfield, the FBI first filed a motion to dismiss which the GAO denied.  Following GAO's denial, the FBI announced its intention to take "corrective action."  Id. at 392-93.  The corrective action would consist of canceling all four of the BPAs – WHR, Allegiance, Lexicon, and Brookfield – and conducting a new procurement with a revised solicitation.  Id. at 393.  On July 26, 2013, WHR filed its complaint in this Court challenging the proposed corrective action.  Id. at 394.  Early in the Court proceedings, all five of the other interested offerors who had participated in the GAO protests were allowed to intervene in the judicial protest.  The current attorneys' fees dispute, however, involves only WHR and the Government, so the other parties and their counsel are not listed in the caption above.  See WHR Group, 115 Fed. Cl. at 386-88 for a complete listing of the parties and their counsel.

On the merits of the protest before Judge Block, WHR prevailed in all respects.  On August 12, 2013, Judge Block entered a temporary restraining order ("TRO") preventing the FBI from proceeding with a new procurement.  On March 21, 2014, Judge Block granted WHR's motion for judgment on the administrative record and entered a permanent injunction again preventing any new procurement.  The Court entered a final judgment on March 27, 2014.  The time for filing an appeal expired on May 27, 2014, but none of the parties filed an appeal.  WHR's motion for recovery of attorneys' and expenses followed on June 17, 2014.

The basis for the granting of injunctive relief was that the FBI's decision to take corrective action was not rationally related to any procurement defect.  The protest filed by CapRelo, the fourth lowest offeror, against the Brookfield award, the sixth lowest offeror, did not implicate any of the three lowest priced awards.  There was no rational justification for canceling the solicitation and starting over with a new procurement.

## Eligibility for an EAJA Award

To receive an award of attorneys' fees and expenses under EAJA, five conditions must be met:  (1) the fee application must be submitted within 30 days of final judgment in the action and be supported by an itemized statement; (2) at the time the civil action was initiated, the applicant, if a corporation, must not have been valued at more than $7,000,000 in net worth or employed more than 500 employees; (3) the applicant must have been the "prevailing party" in a civil action brought by or against the United States; (4) the Government's position must not have been "substantially justified;" and (5) there cannot

3

exist any special circumstances that would make an award unjust. 28 U.S.C. § 2412(d)(1)(A), (B); see also Comm'r, Immigration & Naturalization Serv. v. Jean, 496 U.S. 154, 158 (1990); United Partition Sys., Inc. v. United States, 95 Fed. Cl. 42, 49 (2010); ACE Constructors, Inc. v. United States, 81 Fed. Cl. 161, 164 (2008).

### 1. Timely Application

An EAJA fee application is timely if it is submitted within 30 days of final judgment in the action. 28 U.S.C. § 2412(d)(1)(B). The term "final judgment" means "a judgment that is final and not appealable." 28 U.S.C. § 2412(d)(2)(G). In the present case, the Court entered its judgment on March 27, 2014, and the 60-day appeal period expired on May 27, 2014 without any party taking an appeal.[2] WHR filed its fee application on June 17, 2014, and this is timely filed within 30 days of final judgment. Defendant agrees that WHR's fee application is timely filed.

### 2. WHR's Size and Net Worth

WHR meets the size and net worth standards necessary to be eligible for an award under EAJA. 28 U.S.C. § 2412(d)(2)(B)(ii). Through the declaration of Robert Keefe, WHR's President, the Court is satisfied that WHR has at all relevant times employed far fewer than 500 persons, and that its net worth was below the $7,000,000 threshold. In an exhibit to his declaration, Mr. Keefe has attached an audited financial statement for 2013 showing a net worth of less than $7,000,000. Defendant does not contest that WHR meets the size requirements of EAJA.

### 3. Prevailing Party

A plaintiff is a prevailing party under EAJA if it is granted some relief on the merits of its claim. See Astrue v. Ratliffe, 560 U.S. 586, 591 (2010); Davis v. Nicholson, 475 F.3d 1360, 1363 (Fed. Cir. 2007). WHR easily satisfies the prevailing party requirement. WHR prevailed on all of its arguments that the FBI's proposed "corrective action" was unreasonable and should be enjoined, and that the agency's continued use of the Brookfield task order instead of WHR's valid BPA was improper. Judge Block of this Court issued

---

[2] The 60th day following the Court's entry of judgment was Monday, May 26, 2014, the Memorial Day federal holiday. The deadline thus is extended to the next day, Tuesday, May 27, 2014. Fed. R. App. Proc. 26(a)(1)(C).

both a TRO and a permanent injunction forbidding the FBI's corrective action. WHR prevailed in all respects. Defendant agrees that WHR was the prevailing party.

### 4. Government's Position Was Not Substantially Justified

Where, as here, the Government loses its case on the merits, it bears the burden of showing that its position was "substantially justified." See, e.g., White v. Nicholson, 412 F.3d 1314, 1315 (Fed. Cir. 2005); Dalles Irrigation Dist. v. United States, 91 Fed. Cl. 689, 702-03 (2010) (finding that the Government's position was not substantially justified where government conduct directly contravened the parties' contract); see also Doty v. United States, 71 F.3d 384, 385 (Fed. Cir. 1995). The government's "position" that must be substantially justified encompasses the entirety of its conduct, including both agency-level action and the litigation. Doty, 71 F.3d at 386; Standard Commc'ns, Inc. v. United States, 106 Fed. Cl. 165, 172 (2012). Defendant contends that, even though it lost the protest on the merits, its litigation position was substantially justified. This is the one area of the five EAJA conditions where Defendant opposes WHR's application for fees and expenses.

The FBI's plan to implement corrective action took a wrong turn when the agency decided to award a fourth contract to Brookfield to resolve Brookfield's GAO protest, notwithstanding that Brookfield was only the sixth-priced offeror in line for award. Thus, in settling with Brookfield, the FBI planned to leave the three lowest-priced contracts in place, pass over the fourth- and fifth-priced offerors, and award an additional contract to Brookfield. Even though the fourth- and fifth-priced offerors were not then involved in Brookfield's GAO protest, it was naïve for the FBI to think that these passed-over offerors would not complain about the FBI's apparent favoritism toward Brookfield. Indeed, in addition to awarding a fourth contract to Brookfield, the FBI executed the aforementioned settlement agreement with Brookfield specifically anticipating that these passed-over offerors might file a new protest at the GAO or the Court of Federal Claims. The June 7, 2013 settlement agreement provided in part:

> (c) *If a protest is filed by a disappointed bidder*, Brookfield will file a request for summary dismissal (at GAO) or move to dismiss (at the U.S. Court of Federal Claims);

> (d) If the circumstances under Paragraph (c) occur, the FBI will join Brookfield's request or motion and/or file its own;

> (e) If the dismissal is denied, FBI Contracting Officer Dina Olibah represents that her/the FBI's present intent is to

>take corrective action by amending the RFQ to eliminate
>the financial capability requirement and the corresponding
>documentation requirement and to allow revised
>submissions by all offerors, including revised pricing.

Administrative Record ("AR") 1813 (emphasis added).

As the events played out, two passed-over offerors, CapRelo and TRC, did file new bid protests at the GAO aimed only at challenging the fourth contract award to Brookfield. As planned in the settlement agreement provisions quoted above, the FBI and Brookfield filed motions for summary dismissal at the GAO. AR 2031-33, 2034-43, 2051-53; WHR Group, 115 Fed. Cl. at 392. The GAO dismissed TRC's protest because TRC was the seventh offeror in line for award, and was not an interested party. AR 2065-66. However, the GAO declined to dismiss CapRelo's protest because, as the fourth-lowest offeror, CapRelo was an interested party to challenge the Brookfield award. AR 2049.

At this point, pursuant to paragraph (e) of the settlement agreement with Brookfield, the FBI announced on July 12, 2013 that it would take new "corrective action" to resolve the CapRelo protest. In transmittals to the four BPA awardees, the contracting officer stated that each of the BPAs would be canceled, and the FBI would start over with a new solicitation. AR 2068-69. There was no rational reason to disturb the three awards to Allegiance, Lexicon, or WHR, because the FBI's needs for the relocation services still existed, and CapRelo had not even challenged these three awards in its bid protest. The cancellation of all the BPAs went far beyond the permissible corrective action under the law.

An agency's corrective action must be rationally related to some procurement defect. Sys. Application & Technologies, Inc. v. United States, 100 Fed. Cl. 687, 720-21 (2011); Sheridan Corp. v. United States, 94 Fed. Cl. 663, 669-70 (2010). Here, the Court cannot see a rational reason for any of the FBI's actions in making an award to Brookfield, or in later wanting to cancel all four BPA's to resolve CapRelo's protest. As noted, CapRelo did not even challenge the awards to Allegiance, Lexicon, or WHR. The fact that the FBI had laid out such a plan in its settlement agreement with Brookfield does not legitimize the Allegiance, Lexicon, and WHR cancellations. It is settled law in GAO bid protests that "[t]he existence of a settlement agreement does not permit the contracting agency to act in ways not otherwise permitted by applicable statutes and regulations." Earth Property Servs., Inc., B-237742, 90-1 CPD ¶ 273 at *4 (Comp. Gen. Mar. 14, 1990),

aff'd B-237742.2, 90-1 CPD ¶ 546 (Comp. Gen. June 11, 1990); see also Coulson Aviation (USA), Inc. et al., B-409356.2 et al., 2014 CPD ¶ 106 at *17 (Comp. Gen. Mar. 31, 2014).

The record reflects that Brookfield was able to negotiate a favorable deal with the FBI in which it would either receive a fourth contract award as the sixth-priced offeror, or it would at least obtain an opportunity to rebid the procurement at the expense of the three unchallenged awardees, Allegiance, Lexicon, and WHR. The fact that the FBI agreed in the settlement to make some changes to the solicitation only if further bid protests were not summarily dismissed shows that the changes were just "window dressing" to make the cancellations of the three unchallenged contracts seem legitimate. Indeed, accepting that the FBI wanted to resolve the original Brookfield bid protest, it could have done so just by awarding a fourth contract to Brookfield without the need for any settlement agreement. The chances of the passed-over offerors filing further bid protests were so high that Brookfield's fall-back position was to at least insure a rebid to be able to compete again. The settlement agreement in itself amounted to impermissible favoritism of a single offeror that was not even in line for award.

In a rebid scenario, Allegiance, Lexicon, and WHR would be prejudiced by having to compete again for contracts they had already won in a fair competition, but now with their prices disclosed. WHR Group, 115 Fed. Cl. at 403-04; Sheridan, 94 Fed. Cl. at 669-70. In such a setting, these three winning offerors likely would have to "bid against themselves" by lowering their prices to keep the contracts they had previously won. The FBI's settlement with Brookfield truly was a "sweetheart deal" that would direct an undeserved contract to it, or at least allow Brookfield a do-over to the extreme prejudice of Allegiance, Lexicon, and WHR. Although an agency has wide discretion to implement corrective action, there is no law, regulation, or case precedent that would allow an agency to venture far beyond the limits of permissible corrective action and to cancel contracts that were not even challenged in a bid protest.

Judge Block concluded his opinion on the merits of WHR's protest with the following observation:

> It is also worth adding as a final point that if the FBI's "corrective action" in this case were not enjoined, it would signify that the government's power to take "corrective action" is nigh unlimited. The requirement that corrective action be "targeted" or "rationally related" to an existing defect in the initial procurement is essential to the integrity of the procurement system. In this case it is clear that the "corrective action" was not targeted or rationally related to any actual

defect and it is therefore crucial to the public interest that the
FBI's "corrective action" be enjoined.

<u>WHR Group</u>, 115 Fed. Cl. at 405.  The Government has fallen well short of its burden of
proof, and has not offered any convincing arguments to show that its position was
substantially justified.

    5.  <u>Special Circumstances</u>

    Neither party contends that there are any special circumstances to be considered in
assessing WHR's claim for attorneys' fees and expenses.  Therefore, this category of the
five EAJA conditions need not be considered.

<u>Amount of WHR's Recovery</u>

    The EAJA allows recovery of attorneys' fees and expenses, subject to certain
limitations, including a cap on the hourly rate for fees.  A statutory $125 per hour cap
applies to attorneys' fees claims, "unless the court determines that an increase in the cost
of living or a special factor, such as a limited availability of qualified attorneys for the
proceedings involved, justifies a higher fee." 28 U.S.C. § 2412 (d)(2)(A)(ii).  Cost of living
adjustments to the statutory cap should be freely granted.  <u>United Partition Sys.</u>, 95 Fed.
Cl. at 58; <u>see also</u> <u>Baker v. Brown</u>, 839 F.2d 1075, 1084 (5th Cir. 1988) (stating that absent
"unusual circumstances," an award of EAJA attorneys' fees should include a cost of living
adjustment); <u>Payne v. Sullivan</u>, 977 F.2d 900, 903 n.2 (4th Cir. 1992) (acknowledging that
many circuits "regard the cost of living adjustment as 'essentially perfunctory or even
mandatory.'") (citation omitted).

    WHR is seeking a cost of living adjustment to the statutory cap for attorneys' fees.
The $125 hourly cap was established 19 years ago, in March 1996.  WHR's cost of living
adjustment is based on Consumer Price Index ("CPI") data between March 1996 and the
date on which the legal services were rendered.  Where the legal services span a number
of months, as here, our Court has used the "mid-point" method to perform a CPI
calculation.  <u>United Partition Sys.</u>, 95 Fed. Cl. at 58; <u>Chiu v. United States</u>, 948 F.2d 711,
722 n.10 (Fed. Cir. 1991); <u>Geo-Seis Helicopters, Inc. v. United States</u>, 79 Fed. Cl. 74, 79
(2007); <u>Cal. Marine Cleaning, Inc. v. United States</u>, 43 Fed. Cl. 724, 734 (1999).  Under
the "mid-point" method, the Court determines the "month that lies at the mid-point between
the first and last month for which attorneys' fees are being awarded," and uses the CPI for
that "mid-point" month as the basis for the cost of living adjustment to the statutory cap.

DGR Assocs., Inc. v. United States, 97 Fed. Cl. 214, 221 (2011), rev'd on other grounds, 690 F.3d 1335 (Fed. Cir. 2012).

WHR is claiming attorneys' fees for the period June 2013 through June 2014.  The mid-point in that period is December 2013.  To calculate the cost of living adjustment for March 1996 through December 2013, the statutory cap of $125 is multiplied by the CPI in December 2013 (233.049) and divided by the CPI in March 1996 (155.7).  This calculation results in an inflation adjusted hourly rate of $187.10.  Defendant does not oppose this hourly rate.

WHR's total claim for attorneys' fees and expenses is $110,657.59.  This amount is comprised of 565 attorney hours at a rate of $187.10 per hour ($105,711.50), 12.4 hours of paralegal and summer associate time at $145 per hour ($1,798.00), and out-of-pocket expenses of $3,148.09.  The Government challenges only a portion of these fees and costs which were incurred between the time this case was ripe for decision (September 20, 2013) and the time the Court's decision was issued (March 21, 2014).  The Government asserts that WHR's attorneys continued to bill time to this protest after the matter had been fully briefed.  The Government states that the time entries either were for unnecessary work, or for work related to other litigation.

WHR explains that the legal services spent between September 20, 2013 and March 21, 2014 (29.6 hours) predominantly were undertaken in responding to Defendant's notices to the Court of the FBI's intention to continue issuing noncompetitive extensions of the Brookfield task order, for months at a time, rather than obtaining relocation services through WHR's validly awarded BPA.  See Notices, Oct. 18, 2013 (Dkt. 106), Nov. 25, 2013 (Dkt. 107), Feb. 21, 2014 (Dkt. 108) (announcing FBI's intent to extend Brookfield's task order for additional months).  Judge Block found these sole-source extensions unlawful.  WHR Group, 115 Fed. Cl. at 405.  The Court observed that "any continued extensions of Brookfield's non-competitive task order or utilization of that task order is unlawful given the option of the plaintiffs' competitively-awarded BPAs."  Id.  The 29.6 hours at $187.10 per hour is only $5,538 (approximately 5 percent) of the total attorneys'

fees requested, and the Court finds the amount reasonable under the circumstances presented.[3]  There is no evidence of any claimed hours being spent on other litigation.

Conclusion

Based upon the foregoing, the Court awards EAJA attorneys' fees and expenses to WHR in the amount of $110,657.59.  The clerk is directed to enter judgment in WHR's favor in this amount.

On or before June 30, 2015, the parties shall carefully review this opinion for competition-sensitive, proprietary, confidential or other protected information, and submit to the Court proposed redactions to this opinion, if any, before it is released for publication. The parties are requested to minimize their requested redactions so that the Court may publish as much of the decision as possible.

IT IS SO ORDERED.

s/Thomas C. Wheeler
THOMAS C. WHEELER
Judge

---

[3] The Government is incorrect in stating that the fees in question for September 20, 2013 through March 21, 2014 are $19,939.83.  Def.'s Resp. Br. at 16-17.